## IN THE COURT OF APPEALS OF IOWA

No. 21-0459
Filed July 21, 2021

**IN THE INTEREST OF K.P., J.P., K.P., J.P., J.P., K.P., and K.P.,**
**Minor Children,**

**K.P., Mother,**
　　　Appellant.
_____

　　　Appeal from the Iowa District Court for Floyd County, Karen Kaufman Salic, District Associate Judge.


　　　The mother appeals the termination of her parental rights. **AFFIRMED.**


　　　Mark Milder, Denver, for appellant mother.

　　　Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

　　　Becky Wilson of Elwood, O'Donohoe, Braun & White, LLP, Charles City, attorney for K.P., J.P., K.P., J.P. and K.P., minor children.

　　　Ann Troge, Charles City, attorney for J.P. and K.P., minor children.

　　　Cynthia Schuknecht of Noah, Smith, Schuknecht & Sloter, P.L.C., guardian ad litem for minor children.


　　　Considered by Vaitheswaran, P.J., and Greer and Schumacher, JJ.

**GREER, Judge.**

The mother appeals the termination of her parental rights to seven children.[1] The children range in age from seventeen years old (sixteen at the time of the termination hearing) to five years old. Iowa Code section 232.116(1)(f) (2020) was the ground for termination as to all seven children. The mother argues the State failed to prove grounds for termination under section 232.116(1)(f) because the children could have been returned to her care or, alternatively, claims the juvenile court should have granted a six-month extension to allow her more time to work toward reunification. Lastly, she asserts the juvenile court should have applied exceptions to termination under Iowa Code section 232.116(3)(b) and (c).

**I. Facts and Earlier Proceedings.**

This family's history with the Iowa Department of Human Services (DHS), began in 2004, when the oldest child was born. After that case resolved in 2006, the next intervention with DHS occurred in 2016 because of domestic violence between the parents. By 2017, the family had grown to eight children, although only seven are at issue here.[2] In 2018, ten different child protective services (CPS)

---

[1] The mother had eight children. A younger child, K.P., was born in 2017 to a different father, and the mother's parental rights to this child were terminated in a prior, separate proceeding. The juvenile court took judicial notice of all case filings related to the eight children. We have decided several cases involving the eighth child. *See In re K.P.,* No. 20-1387 , 2021 WL 1016577 (Iowa Ct. App. Mar. 17, 2021) (terminating the mother's rights); *In re K.P.,* No. 20-0402, 2020 WL 3571890 (Iowa Ct. App. July 1, 2020) (addressing the father's challenge to removal); *In re K.P.,* No. 20-0220, 2020 WL 1881122 (Iowa Ct. App. Apr. 15, 2020) (addressing the mother's challenge to removal); *In re K.P.,* No. 19-0470, 2019 WL 2524137 (Iowa Ct. App. June 19, 2019) (addressing both parents' challenge to removal).
[2] The children impacted by this proceeding are: K.P., age seventeen; K.P., age fifteen; J.P., age 14; J.P., age thirteen; K.P., age eight; J.P., age six; and K.P., age five. Their father died in December 2019.

investigations were launched, but all ten were ultimately unconfirmed.  *See K.P.*,
2019 WL 2524137, at *1.  The allegations involved multiple children and "included
abuse, use of dangerous substances around the children,[3] denial of critical care,
and failure to supervise the children."  *Id.*  There were also reports of domestic
violence in the presence of the children.  Because of a genetic predisposition, three
of the seven children require cochlear implants, and the mother's neglect of those
devices became another allegation raising the concern of adjudicatory harm.

In February 2019, all eight children were adjudicated in need of assistance
(CINA) under Iowa Code section 232.2(6)(c)(2) (2019).  *Id.* at *2.  The juvenile
court ordered removal from the mother's care, but the State, DHS, and the
guardian ad litem recommended the parents share custody of the children.  The
mother appealed, and our court reversed the removal in June 2019, finding it was
not supported by clear and convincing evidence.  *Id.* at *3.  In particular, we
determined the mother was participating in services, working to improve her
parenting skills, and was no longer in the relationship that was the main source of
domestic violence concerns.  *Id.*  The State requested removal of the children
again that October, but the juvenile court denied the request because the evidence
presented was mostly the same evidence found insufficient by our court.  The
juvenile court also granted the mother's request to close seven of the CINA cases,[4]
finding:

---

[3] The mother obtained a substance-abuse evaluation in March 2019 and was
diagnosed with an unspecified alcohol related disorder, unspecified amphetamine-
type use disorder, and unspecified cannabis-related disorder.
[4] The juvenile court did not close the CINA case as to the youngest child, who has
a different father than the seven children at issue.

> The purposes of the order cannot reasonably be accomplished because there has not been meaningful progress by [the mother] . . . . In particular, [the mother] skirts the edge of compliance with the court's orders and is unwilling to fully engage in any court ordered services. Further, the efforts made to effect the purposes of the order have been unsuccessful and other options to effect the purposes of the order are not available. Many of the issues for these two parents cannot be resolved by this Court, [DHS] or any services available. There is an existing custodial order for these children. Termination of the dispositional order and unsuccessful case closure is appropriate.

Less than two months later, in December 2019, the seven older children tragically lost their father. Shortly after, DHS received a video appearing to show the mother snorting a substance believed to be cocaine. Based on the video, the children were removed and the State again petitioned to have the children adjudicated CINA in January 2020. The children were split into three homes and remain separated to date, although they do regularly visit one another.

The mother concedes it was her in the video but denies she was snorting cocaine. She acknowledges two relapses with cocaine in March and August 2020. She consistently provided negative test results after the August relapse up to November, but the mother's DHS caseworker testified she had not asked the mother to test in December, January, or February. Further testing was not approved, apparently over concerns that past results were not valid. The juvenile court did not think the clean test results were credible, believing the mother was circumventing the drug testing. We noted our finding in April 2020 that

> the mother ignores the fact that she has been found to have taken efforts to sabotage drug testing and has been believed to have been successful in such efforts due to the fact that the mother has had negative drug tests during times when it would have been expected she would test positive given her admissions of use.

*K.P.*, 2020 WL 1881122, at *2. Raising additional concerns, a family support specialist observed a "pass any drug test" kit in the mother's home in September 2020.

The juvenile court also questioned the mother's attendance at a concert in the spring of 2020 and two motorcycle rallies that summer, which it considered risky behavior given the "increased temptation" for substance abuse. Additionally the juvenile court noted such action given the COVID-19 public health emergency posed a risk of contracting and transmitting the virus to her children. And, certain pictures and videos from these events were posted online, including one posted by the mother where her buttocks was exposed. While this may very well embarrass the children and does not show maturity on the part of the mother to put her children before her need to be a "free spirit," it does not amount to adjudicatory harm contemplated by the statute.

The mother's relationship with the children is somewhat of a mixed bag. The oldest child, age sixteen at the time of termination, refuses to attend visits or have any contact with his mother. That said, he would not affirmatively support termination of her parental rights out of fear of impacting the younger children. The third oldest also resisted visits and favored termination. The other children have expressed some desire to reunite with their mother, but three of the children are eight years old or younger. Two of the older children, age fifteen and twelve, generally objected to termination.

In a separate but related matter, the mother's parental rights to her three-year old child, a half-sibling of the other seven children, were terminated in October 2020. She appealed, and we affirmed the termination. *K.P.*, 2021 WL 1016577,

at *1. We noted the mother continued to struggle with "unresolved mental-health issues, violence and abuse . . . , proper supervision, and meeting essential needs." *Id.* at *2. We again noted concerns that the mother was able to successfully circumvent drug testing.

Despite the twists and turns of the proceedings, we acknowledge the mother's progress since the October termination involving the three-year-old child she had with another father. Her substance-abuse counselor reports she has been a consistent and active participant in treatment. But the juvenile court chastised the counselor for not being aware or concerned about the likelihood the mother's drug test results were not accurate. As another positive, the mother obtained a fulltime job at a local factory. Domestic violence issues are no longer a concern, although this is likely attributable to the death of the children's father and the mother's relationship with the other father ending. Still, she continued undisclosed relationships with men, which could not be evaluated as healthy by DHS. Her DHS caseworker said the mother has consistently attended visits with the children, while remaining prepared, appropriate, and active. She maintains a safe and appropriate environment for the children during visits at her home. There have been no reports that the mother is under the influence during visits. One foster home placement commended the mother for attending health-care and school appointments for two of the children. It was also noted that the three children with impaired hearing had functioning cochlear implants on a consistent basis.

## II. Standard of Review and Error Preservation.

We review the termination of parental rights de novo. *In re Z.P.*, 948 N.W.2d 518, 522 (Iowa 2020). "We will uphold an order terminating parental rights when

there is clear and convincing evidence of the statutory grounds for termination. Evidence is clear and convincing when there is no serious or substantial doubt as to the correctness of the conclusions of law drawn from the evidence." *In re T.S.*, 868 N.W.2d 425, 431 (Iowa Ct. App. 2015) (citation omitted). Our primary concern is the best interest of the children. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).

The mother preserved error on her claims by contesting the grounds for termination at trial and requesting a six-month extension to work toward reunification. The juvenile court decided no statutory exceptions to termination applied, so that issue is also preserved.

**III. Analysis.**

We review termination of parental rights using a three-step analysis. *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). First, we determine whether a ground for termination under Iowa Code section 232.116(1) is established. *Id.* Second, if a ground for termination is established, we apply the best-interest framework under Iowa Code section 232.116(2). *Id.* Third, if the best interest framework supports termination, we consider whether any permissive exceptions to termination under Iowa Code section 232.116(3) apply. *Id.*

**A. Termination under Section 232.116(1)(f).**

The mother concedes the first three elements of Iowa Code section 232.116(1)(f) were established.[5] She contests the final element, arguing the State

---

[5] Iowa Code section 232.116(1)(f) provides parental rights may be terminated if the court finds:
        (1) The child is four years of age or older.
        (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

failed to prove her children could not be returned to her care at the time of the termination hearing.

We have already detailed the mother's history of drug use, domestic violence, mental-health issues, and failure to properly supervise the children or attend to their needs. But there are also signs that the mother has made real progress since her last relapse in August 2020; she has consistently attended substance-abuse treatment and visits with the children, and she behaves appropriately during visits. She has been involved in some of the children's school and medical appointments and obtained a full-time job. Yet each time the mother made improvements with the concerns leading to removal of the children, progress has been short-lived. With that in mind, past performance can suggest the future care the parent might provide. *See In re A.A.G.*, 708 N.W.2d 85, 92 (Iowa Ct. App. 2005). And we note the progress is very recent with no proven record that the changes will last. *Id.*

Here, these positive developments come with a caveat; the juvenile court characterized her negative drug test results as "almost meaningless" and found the mother has unresolved substance-abuse issues that she has never openly acknowledged. Likewise, the juvenile court's suspicions of invalid test results were bolstered by the DHS worker's testimony. And there were examples of conflicts

---

(3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.

(4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

between what the mother told the various counselors and social workers and what the mother did. "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *Id.* (quoting *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010)). As of the termination hearing, the mother had not progressed past supervised visits, creating no assurance that she could successfully parent seven children. The children were comfortable and doing well in the foster placements. We are concerned that the mother has not yet faced her substance-abuse issues, let alone resolved them. And over the course of the involvement by DHS, the mother often was not present, neglected medical care issues over the cochlear implants that impacted educational advancement, and failed to recognize the children required mental-health counseling because of her behaviors. Thus, we find clear and convincing evidence that the children could not be returned to the mother's care at the time of the termination hearing under section 232.116(1)(f)(4). *See D.W.,* 791, N.W.2d at 707 (interpreting "at the present time" in the statute to mean "at the time of the termination hearing").

**B. Best-Interests Determination.**

Next we must determine whether termination is in the best interest of these children. In doing so, we look at the mother's past parenting efforts to discern her parenting capabilities in the future. *See In re L.H.*, 904 N.W.2d 145, 149 (Iowa 2017). These children have been removed from the mother, returned, and removed again. CINA adjudications have been closed, then reopened only months later. "It is well settled law that we cannot deprive [children] of permanency after the State has proved a ground for termination under section 232.116(1) by hoping

someday a parent will learn to be a parent and be able to provide a stable home for the [children]." *P.L.*, 778 N.W.2d at 40. These children, three of them under the age of ten, have never had the stability they deserve. The DHS worker testified she had no concerns about the children's placements, stating, "[t]hey are overall being well taken care of where they are currently residing." The mother also admits the children are integrated into their respective foster homes. *See* Iowa Code § 232.116(2)(b). We agree with the juvenile court that termination is in their best interest.

## C. Request for a Six-Month Extension.

To continue placement for six more months, a juvenile court must determine "the need for removal will no longer exist at the end of the extension." *A.A.G.*, 708 N.W.2d at 92. The children have been removed for over a year. Considering the mother's history of substance abuse, persistence in subverting drug-testing requirements, and her failure to consistently care for all seven children on her own, we have no confidence that the need for removal would cease in six months, given DHS involvement that stems back approximately eighteen years. At the end of a year of removal, we view these proceedings with a sense of urgency. *See In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000) (discussing urgency in the context of termination proceedings). We deny the mother's request for a six-month extension.

## D. Statutory Exceptions to Termination.

The mother directs us to two permissive exceptions to termination, Iowa Code section 232.116(3)(b) and (c). Section 232.116(3)(b) provides we need not terminate parental rights if "[t]he child is over ten years of age and objects to

termination." Two of the children, ages twelve and fifteen at the time of the termination hearing, objected through their court appointed attorney. Both thought their mother "should have another chance" and believed she was a good mother. We recognize how painful it must be to lose a father and shortly after face the prospect of losing their mother, who they love. But these now-teenaged children also expressed reservations about visiting the mother at times and were experiencing the stability they deserved outside their mother's chaotic parenting and lifestyle. The mother acknowledges they are integrated into their current foster homes, and we will not upset that stability. We decline to apply this exception. Likewise, we decline to apply the section 232.116(3)(c) exception based on the closeness of the parent-child relationship. The exception applies when "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." Iowa Code § 232.116(3)(c). Again, we recognize the children love their mother and are bonded with her to some degree. But that alone is not enough to offset their newfound stability and the risk that the mother will again regress in her caretaking. The record fails to show that the termination would be detrimental to the children.

**IV. Conclusion.**

We decline the mother's request for a six-month extension to work toward reunification and to apply any exceptions to termination. We affirm termination of the mother's parental rights to these seven children.

**AFFIRMED.**